UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL GERMAIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:15-CV-1694-M (BT) |
| | § | |
| U.S. BANK NATIONAL | § | |
| ASSOCIATION, and OCWEN LOAN | § | |
| SERVICING, LLC, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion for Summary Judgment [ECF No. 54] filed by Defendants U.S. Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-7, Mortgage Pass-Through Certificates, Series 2006-7 ("U.S. Bank"), and Ocwen Loan Servicing, LLC ("Ocwen") (collectively, "Defendants"). For the following reasons, Defendants' Motion for Summary Judgment is GRANTED.

## **BACKGROUND**

This civil action arises out of foreclosure proceedings initiated against real property located at 15531 Bay Point Drive, Dallas, Texas 75248 (the "Property"). *See* 4th Am. Compl. 2 [ECF No. 48]. Plaintiff

Michael Germain filed an original petition in the 193rd Judicial District Court in Dallas, Texas on May 1, 2015 seeking to prevent a May 5, 2015 foreclosure on the Property. *See* Case Summary [ECF No. 1-3 at 2]; Original Pet. [ECF No. 1-4 at 1 & 9]. On May 4, 2015, the state court issued a Temporary Restraining Order and set a May 15, 2015 hearing on Plaintiff's Application for Temporary Injunction. *See* Order [ECF No. 1-5 at 2-3]. Defendants removed the case to the federal district court the day before the hearing on May 14, 2015. *See* Notice of Removal [ECF No. 1].

Plaintiff's operative Fourth Amended Complaint alleges the following claims: (1) violations of the Real Estate Settlement Procedure Act ("RESPA") pursuant to Title 12, Code of Federal Regulations, Section 1024.41 ("Section 1024.41") against Ocwen; (2) violations of the Texas Debt Collection Act ("TDCA"), pursuant to Texas Finance Code ("TFC"), Sections 392.301(a)(8), 392.304(a)(14), and 392.304(a)(19) against U.S. Bank and Ocwen; (3) promissory estoppel under Texas law against U.S. Bank and Ocwen; (4) violation of Section 83.001 of the Texas Government Code against dismissed defendant Power Default Services, Inc.; and (5) violation of the federal Declaratory Judgment Act under Title 12, United States Code,

Section 2605(f) against all of the defendants. *See* 4th Am. Compl. 8-21 [ECF No. 48]. Plaintiff also alleges that Defendants are vicariously liable for the conduct of their employees, agents, attorneys, affiliated entities, vice principals, and representatives of their affiliated entities. *See* 4th Am. Compl. 7. Plaintiff seeks actual, statutory, and exemplary damages, and attorneys' fees. *See* 4th Am. Compl. 22. Plaintiff further asks the Court to "enjoin Defendants from selling the Property at a foreclosure sale un[less] the Defendants" comply with RESPA. *See* 4th Am. Compl. 22.

Defendants filed their Motion for Summary Judgment on August 25, 2017. On September 15, 2017, Plaintiff filed his response [ECF No. 57]. Defendants filed their reply [ECF No. 60] on October 13, 2017. This matter has been fully briefed and is now ripe for adjudication.

## STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Prods., Inc.*, 44

F.3d 308, 312 (5th Cir. 1995). The movant's burden can be satisfied by demonstrating that there is an absence of evidence which supports the nonmoving party's case for which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence[.]" *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). However, "the court is under no duty to sift through the record to find evidence that supports a nonmovant's opposition to a motion for summary judgment." *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)).

## **ANALYSIS**

On December 15, 2005, Plaintiff executed a Deed of Trust in favor of Morgan Stanley Credit Corporation ("Morgan Stanley") that

secured repayment on a Note for $144,000 (the "Loan") to refinance the Property. *See* Defs.' Exs. A [ECF No. 56 at 6], A-1 [ECF No. 56 at 14-26], A-2 [ECF No. 56 at 29-35]. In addition, Plaintiff signed a Loan Agreement Rider in connection with the Loan, which states, in pertinent part, that "[t]he Loan Agreements may not be varied by any oral agreements or discussions that occur before, contemporaneously with, or subsequent to the execution of the Loan Agreements" and that "[t]here are no unwritten oral agreements between the parties." *See* Defs.' Ex. A-3 [ECF No. 56 at 38].

Ocwen began servicing the Loan on April 2, 2012, and the Loan was assigned to U.S. Bank on August 19, 2014. *See* Defs.' Exs. A [ECF No. 56 at 6-7], A-4 [ECF No. 56 at 41]. At the time Ocwen began servicing the Loan, Plaintiff was in default and received a notice of default. *See* Defs.' Exs. A [ECF No. 56 at 7], A-6 [ECF No. 56 at 53-55]. Plaintiff has been in and out of default since 2009. *See* Defs.' Ex. B [ECF No. 56 at 147]. Plaintiff's last loan payment was in December 2013, and this payment was applied to the payment owed for May 2013. *See* Defs.' Ex. A. The balance remaining on the Loan as of August 24, 2017 is $87,573.51. *See* Defs.' Ex. A [ECF No. 56 at 11].

Plaintiff admits that he was in default on February 2, 2012. *See*

Defs.' Exs. A-6 [ECF No. 56 at 53], Ex. B [ECF No. 56 at 176]. On July 7, 2012, Ocwen sent Plaintiff a letter with mortgage assistance options that were available to Plaintiff at that time such as a loan modification, a repayment plan, a short sale, and a deed in lieu of foreclosure. *See* Defs.' Exs. A-7 [ECF No. 56 at 57], A [ECF No. 56 at 7]. Plaintiff admits that he received the July 7, 2012 letter and several others. Defs.' Ex. B [ECF No. 56 at 177]. Because Ocwen did not receive a response to the July 7, 2012 letter, Ocwen scheduled the Property for foreclosure. *See* Defs.' Exs. A-8 [ECF No. 56 at 61], A [ECF No. 56 at 7].

On August 24, 2012, Plaintiff submitted his first loss mitigation application. *See* Defs.' Ex. A-9 [ECF No. 56 at 69-81]. Plaintiff stated that he was experiencing financial difficulties in 2012 and "did not have the money to pay." *See* Defs.' Ex. B [ECF No. 56 at 179]. Plaintiff stated that he understood that if he filled out the Loss Mitigation Application, he could be eligible for several options that may help with his delinquent loan. *See* Defs.' Ex. B [ECF No. 56 at 180]. Plaintiff also admitted that his delinquent loan in 2012 was caused by his financial problems and that it was not caused by "anything that Ocwen did." *See* Defs.' Ex. B [ECF No. 56 at 182]. On August 28,

2012, Ocwen denied the loan modification request and explained that the owner of Plaintiff's loan did not allow the modification. *See* Defs.' Ex. A-10 [ECF No. 56 at 83]. Plaintiff admitted that he received the August 28, 2012 denial and that he received "one or two" of these letters. *See* Defs.' Ex. B [ECF No. 56 at 181]. On August 29, 2012, Plaintiff made a significant payment to bring the loan current, and Ocwen ceased further review of Plaintiff's Loan for mitigation options. *See* Defs.' Exs. A [ECF No. 56 at 8], B [ECF No. 56 at 183].

Plaintiff's loan was again in default in June of 2013. *See* Defs.' Exs. A [ECF No. 56 at 8], B [ECF No. 56 at 184]. Plaintiff admitted that he failed to make one or more monthly payments of the principal and interest on the Loan in 2013. *See* Defs.' Ex. E [ECF No. 56 at 230]. Plaintiff also admitted that his financial difficulty was not due to the conduct of Ocwen. *See* Defs.' Ex. B [ECF No. 56 at 183]. On July 20, 2013, Ocwen sent Plaintiff another letter with the options of a loan modification, listing the Property for sale, and a deed in lieu as alternatives to foreclosure. *See* Defs.' Ex. A-11 [ECF No. 56 at 85]. On August 1, 2013, Ocwen sent a letter to Plaintiff following up, because it had not heard from Plaintiff. *See* Defs.' Exs. A [ECF No. 56 at 8], A-12 [ECF No. 56 at 88]. Plaintiff acknowledged receipt of the August 1,

2013 letter. *See* Defs.' Ex. B [ECF No. 56 at 184].

On August 11, 2013, Plaintiff sent another loss mitigation application to Ocwen. *See* Defs.' Ex. A-13 [ECF No. 56 at 91-96]. On August 15, 2013, Ocwen sent a denial letter that was substantially similar to the letter sent in response to Plaintiff's August 24, 2012 application, and explained listing the Property for sale and a deed in lieu as alternatives to foreclosure. *See* Defs.' Ex. A-14 [ECF No. 56 at 99-101]. This letter also identified Morgan Stanley as the owner of Plaintiff's Loan. *See* Defs.' Ex. A-14 [ECF No. 56 at 99]. Plaintiff acknowledged that Morgan Stanley was identified as the owner of his Loan. *See* Defs.' Ex. B [ECF No. 56 at 186]. Plaintiff also acknowledged that Ocwen promptly responded to Plaintiff's applications and that the letter outlined the reason why a loan modification was rejected, namely, the owner of the Loan, Morgan Stanley, did not permit the modification. *See* Defs.' Ex. B [ECF No. 56 at 187].

On September 23, 2013, Plaintiff and Ocwen discussed additional loss mitigation options other than a loan modification. *See* Defs.' Ex. A [ECF No. 56 at 8]. Plaintiff indicated that he was looking into filing for bankruptcy, and Ocwen advised him of the option of a

deed in lieu, which Plaintiff declined. *See* Defs.' Ex. A [ECF No. 56 at 8]. On September 30, 2013, Plaintiff filed for bankruptcy. *See* Defs.' Ex. D [ECF No. 56 at 213]. Plaintiff stated that he filed for bankruptcy because he "wanted to avoid foreclosure." *See* Defs.' Ex. B [ECF No. 56 at 188]. Due to Plaintiff's bankruptcy filing, Plaintiff was put on a repayment plan, and Ocwen ceased review of his loss mitigation application. *See* Defs.' Ex. A [ECF No. 56 at 9]. Plaintiff stated that his bankruptcy was dismissed, because he failed to file required documents. *See* Defs.' Ex. B [ECF No. 56 at 188].

Plaintiff admitted that he did not make one or more payments of principal and interest on his Loan in 2014. *See* Defs.' Ex. E [ECF No. 56 at 230]. On February 19, 2014, Plaintiff sent another loss mitigation application to Ocwen. *See* Defs.' Exs. A-15 [ECF No. 56 at 103-120], B [ECF No. 56 at 180-90]. On February 26, 2014, Ocwen sent its denial of loan modification explaining that Morgan Stanley did not allow a loan modification, but that Ocwen conditionally approved for Plaintiff a short sale. *See* Defs.' Ex. A-17 [ECF No. 56 at 132]. Plaintiff acknowledged that this letter explained that Ocwen reviewed Plaintiff's application for all available loan modification options, denied his request for a loan modification, and approved for

him a short sale. *See* Defs.' Ex. B [ECF No. 56 at 191].

Ocwen evaluated Plaintiff for a forbearance plan under his February 2014 application, and Plaintiff was approved for a loan forbearance plan. *See* Defs.' Ex. A [ECF No. 56 at 10], C [ECF No. 56 at 210]. On July 30, 2014, Ocwen sent a Forbearance Stipulation Agreement that required Plaintiff to send a $13,000 down payment. *See* Defs.' Ex. A-18 [ECF No. 56 at 136]. Plaintiff acknowledged receiving this agreement, but stated that he was not able to agree to its terms. *See* Defs.' Ex. B [ECF No. 56 at 194]. Plaintiff stated in his complaint that the $13,000 was "too high for Plaintiff to make work." *See* 4th Am. Compl. 4.

On March 30, 2015, Plaintiff's Loan was accelerated pursuant to a Notice of Acceleration that referred back to a June 8, 2013 Notice of Default. *See* Defs.' Ex. A-21 [ECF No. 56 at 161-62]. Plaintiff admitted that he failed to make one or more monthly payments of principal and interest on his Loan in 2015 and 2016. *See* Defs.' Ex. E [ECF No. 56 at 230]. On May 1, 2015, Plaintiff filed his lawsuit in state court seeking to prevent foreclosure on his Property. *See* Case Summary [ECF No. 1-3 at 2]; Original Pet. [ECF No. 1-4 at 1 & 9]. Plaintiff testified at his May 31, 2017 deposition that he was still living in the

Property as of that date. Defs.' Ex. B [ECF No. 56 at 166 & 186].

RESPA

Plaintiff contends that Ocwen violated Section 1024.41(c)(1)[1] by failing to evaluate him for all loss mitigation options and by failing to provide proper notice. 4th Am. Compl. 8-9. Plaintiff contends that Ocwen also violated Section 1024.41(d)[2] by failing to provide the specific investor information that resulted in the denial of Plaintiff's most recent loss mitigation application in December 2015, as well as

---

[1] Section 1024.41(c)(1) states:

> Except as provided in paragraph (c)(4)(ii) of this section, if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall: (i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

12 C.F.R. § 1024.41(c)(1).

[2] Section 1024.41(d) states:

> If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.

12 C.F.R. § 1024.41(d).

potentially earlier applications. 4th Am. Compl. 9.

Defendants argue that they are entitled to summary judgment with respect to Plaintiff's RESPA claims because: (1) RESPA's requirements apply to only one completed loss mitigation application; (2) Ocwen evaluated Plaintiff for all of the available loss mitigation options; (3) Ocwen provided notice and specific reasons for its determinations; (4) Ocwen specifically indicated why Plaintiff was denied a loan modification; (5) Ocwen identified Plaintiff's loan investor in response to Plaintiff's 2013 Loss Mitigation Application; and (6) Plaintiff has no evidence of actual or statutory damages. *See* Defs.' Br. 15-21 [ECF No. 55].

"Section 1024.41 of the Code of Federal Regulations provides instructions on loss mitigation procedures." *Obazee v. Bank of New York Mellon*, 2015 WL 4602971, at *2 (N.D. Tex. Jul. 31, 2015) (citing 12 C.F.R. § 1024.41). "This section does not require that the servicer provide the borrower any specific loss mitigation options." *Id.* (citing 12 C.F.R. § 1024.41(a)). Rather, "it specifies procedures and timing for reviewing loss mitigation applications, including requiring the servicer to notify the borrower in writing, within 30 days of receipt of a complete loss mitigation application, which loss mitigation options,

if any, it will offer the borrower, or the specific reasons for denying a complete loss mitigation application." *Id.* (citing 12 C.F.R. § 1024.41(c), (d)).

Section 1024.41(g) provides:

If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) The borrower rejects all loss mitigation options offered by the servicer; or (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g). "Under § 1024.41(b), a complete loss mitigation application is an 'application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower.'" *Obazee*, 2015 WL 4602971, at *2 n.4. "Section 1024.41(f) similarly prohibits a loan servicer from making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure if a borrower submits a complete

loss mitigation application during the 120-day pre-foreclosure review period or before a servicer has made the first notice or filing." *Id.* at *3. "A borrower is entitled to enforce the provisions of § 1024.41 under § 6(f) of RESPA[.]" *Id.* (citing 12 U.S.C. § 2605(f); 12 C.F.R. § 1024.41(a)).

Defendants argue that they are required to comply with RESPA for only one completed loss mitigation application under Section 1024.41(i). *See* Defs.' Br. 15.

> "[A] servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account," even if the borrower's prior application was made before the regulation took effect on January 10, 2014. "The plain text of 12 C.F.R. § 1024.41 does not require compliance with 12 C.F.R. § 1024.41 for multiple loss mitigation applications-without excluding loss mitigation applications submitted before January 10, 2014." . . . . To interpret § 1024.41 otherwise would in effect be to read a key provision-the limitation on "Duplicative Requests" of § 1024.41(i)-out of the regulation for an entire category of borrowers, without any clear intent from the Bureau of Consumer Financial Protection to do so. Such an interpretation would subject loan servicers to regulatory obligations to a potentially vast number of borrowers who had made loss mitigation applications before the regulation took effect, at a time when they were not themselves subject to the corresponding obligations that § 1024.41 imposes on borrowers.

*Allen v. Wells Fargo Bank, N.A.*, 2017 WL 3421067, at *4 (N.D. Tex. Aug. 9, 2017) (quoting *Bobbitt v. Wells Fargo Bank, N.A.*, 2015 WL

12777378, at *3 (S.D. Tex. May 7, 2015); *Wentzell v. JPMorgan Chase Bank, N.A.*, 627 F. App'x 314, 318 n.4 (5th Cir. 2015)).

Defendants argue that, although they were only required by law to give one notice to Plaintiff, they sent denials with respect to loan modifications on at least three separate occasions on August 28, 2012, August 15, 2013, and February 26, 2014 and submits in support of their argument those denial letters. *See* Defs.' Br. 16-17; Defs.' Exs. A-10 [ECF No. 56 at 83], A-14 [ECF No. 56 at 99-101], A-17 [ECF No. 56 at 132-34]. With respect to Plaintiff's allegation that Ocwen did not evaluate him for all loss mitigation options, Defendants refer to evidence showing that Plaintiff was evaluated for a loan modification, a deed in lieu, a short sale, and a forbearance plan. *See* Defs.' Br. 18; Defs.' Exs. A [ECF No. 56 at 7-10], A-14, A-17, A-18 [ECF No. 56 at 136-41], C [ECF No. 56 at 209].

In the response, Plaintiff argues that, because Defendants did not plead that they would rely on Section 1024.41(i) as an affirmative defense to Plaintiff's RESPA claim, this defense is untimely. *See* Pl.'s Br. 4 [ECF No. 57-1] (citing *Amarchand v. CitiMortgage, Inc.*, 2016 WL 1031303, at *2 (M.D. Fla. Mar. 9, 2016)). Plaintiff also argues that Section 1024.41(i) only applies to loss mitigation applications

submitted after its effective date of January 10, 2014. *See* Pl.'s Br. 4.

In addition, Plaintiff reiterates his allegations that Ocwen failed to: (1)

evaluate Plaintiff for all available loss mitigation options; (2) provide

proper written notice; and (3) give a specific reason as to why

Plaintiff's loan modification application was denied. Pl.'s Br. 7-12.

Plaintiff further argues that Defendants' argument as to Ocwen's

correspondence sent in 2013 is irrelevant, because Section 1024.41(i)

did not go into effect until January 10, 2014. Pl.'s Br. 12.

 In the reply, Defendants argue that Plaintiff mistakenly relies

on a Middle District of Florida case dealing with a motion to dismiss

in arguing that Defendants must plead Section 1024.41(i) as an

affirmative defense. *See* Reply 2 [ECF No 60] (citing *Amarchand*,

2016 WL 1031303, at *2). In addition, Defendants argue that

Plaintiff's argument regarding the pre-2014 applicability of Section

1024.41(i) is mistaken, that cases within the Fifth Circuit have

consistently ruled that a servicer's duty to complete a single loss

mitigation application applies without regard to the date of the

application, and that Judge Fitzwater's decision in *Allen* supports

their position on this issue. *See* Reply 3-4 (citing *Allen*, 2017 WL

3421067, at *4). With respect to Plaintiff's argument that Ocwen

failed to evaluate him for all loss mitigation options, Defendants refer to the evidence showing that he was offered a deed in lieu, a short sale, and a forbearance plan. *See* Reply 6; Defs.' Br. 18.

With respect to Plaintiff's argument that Ocwen did not provide specific reasons for its decisions, Defendants point to Ocwen's letters outlining the reasons for the denials and Plaintiff's deposition testimony where he stated that he received several denials that stated that the investor did not accept the modifications. *See* Reply 7; Defs.' Ex. B; Defs.' Br. 18. With respect to Plaintiff's argument that Ocwen's response to Plaintiff's 2013 Loss Mitigation Application is irrelevant, Defendants argue that courts within the Fifth Circuit have held to the contrary. Reply 8. With respect to Plaintiff's argument that Ocwen failed to identify the investor of Plaintiff's loan, Defendants point out that Ocwen identified in writing that the investor is Morgan Stanley. *See* Reply 8; Defs.' Br. 19; Defs.' Ex. A-14.

As Defendants point out, *Amarchand*, the Middle District of Florida case that Plaintiff cites in support of his argument that Section 1024.41(i) must be pled as an affirmative defense, considered this section in the context of a motion to dismiss. *See Amarchand*, 2016 WL 1031303, at *1. Furthermore, that court did not indicate that

Section 1024.41(i) must be pled as an affirmative defense, but merely suggested that the defendant's "contention [wa]s better raised as an affirmative defense[.]" *See Amarchand*, 2016 WL 1031303, at *2 ("While Plaintiff has not alleged that the subject loss mitigation application was her only application, for purposes of the motion to dismiss, her allegations are accepted as true. . . . Without considering matters beyond the four corners of the Amended Complaint, her claim has facial plausibility. Defendant's contention is better raised as an affirmative defense and dispositive motion." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))). Plaintiff states that *Amarchand* is the only case he found that supported his argument that Section 1024.41(i) must be pled as an affirmative defense. *See* Pl.'s Br. 3. Upon consideration, the Court rejects Plaintiff's argument on this issue.

The Court also agrees with Judge Fitzwater's holding in *Allen* that Section 1024.41 only requires a servicer to comply with its requirements for one application, and that it does not exclude applications submitted before its effective date of January 10, 2014. *See Allen*, 2017 WL 3421067, at *4 ("[T]he court . . . holds that, under § 1024.41(i), '[a] servicer is only required to comply with the

requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account,' even if the borrower's prior application was made before the regulation took effect on January 10, 2014."). To construe this section in the manner Plaintiff seeks would, as Judge Fitzwater explained, subject servicers to additional obligations "without any clear intent from the Bureau of Consumer Financial Protection to do so." *Id.* Therefore the Court agrees with Defendants that their review of pre-2014 applications satisfies Section 1024.41, and that servicers are required to comply with the requirements of this section for one application.

As Defendants argue, the undisputed facts demonstrate, and the case law in the Fifth Circuit support, a finding that Ocwen met its obligations under Section 1024.41. In consideration of the foregoing, summary judgment is granted with respect to Plaintiff's RESPA claim. Furthermore, because Owen fulfilled its obligations under RESPA, Plaintiff is not entitled to damages in connection with this claim.

<u>TDCA</u>

Plaintiff alleges that U.S. Bank and Ocwen violated: (1) TFC

Section 392.301(a)(8)[3] by threatening to sell the Property at a foreclosure sale without complying with RESPA; and (2) TFC Sections 392.304(a)(14) and 392.304(a)(19)[4] by urging Plaintiff to submit detailed loss mitigation applications, although Defendants knew that Plaintiff's application would be treated as a loan modification application which would be summarily denied without consideration. *See* 4th Am. Compl. 16; Tex. Fin. Code §§ 392.301(a)(8), 392.304(a)(14), 392.304(a)(19). Plaintiff further contends that he is entitled to actual and exemplary damages and attorney fees under TFC Section 392.403.[5] *See* 4th Am. Compl. 17.

---

[3] Section 392.301(a)(8) states as follows: "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: . . . (8) threatening to take an action prohibited by law. Tex. Fin. Code §§ 392.301(a)(8).

[4] Sections 392.304(a)(14) and 392.304(a)(19) state:

> (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: . . . (14) representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business; . . . (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

Tex. Fin. Code §§ 392.304(a)(14), 392.304(a)(19).

[5] Section 392.403 states in part that:

> (a) A person may sue for: (1) injunctive relief to prevent or restrain a violation of this chapter; and (2) actual damages sustained as a result of a violation of this chapter. (b) A person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs. (c) On a finding by a court that an action under this section was brought in bad faith or for purposes of harassment, the court shall award the defendant attorney's fees reasonably related to the work performed and costs.

Tex. Fin. Code § 392.403.

Defendants argue that, because Plaintiff's TDCA claims are premised on the same allegations as his RESPA claims, his TDCA claims fail for many of the same reasons. *See* Defs.' Br. 21. Defendants argue that, because they provided the requisite RESPA notice and were entitled to foreclose pursuant to the express terms of the Deed of Trust, Defendants were not "threatening to take an action prohibited by law" in violation of Section 392.301(a)(8). *See* Defs.' Br. 22.

Defendants also argue that Plaintiff's contention that Ocwen violated TFC Sections 392.304(a)(14) and 392.304(a)(19) when it "urged Plaintiff to submit detailed loss mitigation applications in order to be considered for a home loan modification or other loss mitigation, despite knowledge that: (1) Plaintiff's application would be treated as an application for loan modification; and (2) the application would be mechanically denied without even be[ing] considered[,]" is incorrect and must be denied. *See* Defs.' Br. 22. Defendants argue that Plaintiff was considered for more than a loan modification and refers to the evidence showing that Plaintiff was (1) considered and approved for a short sale; (2) evaluated and approved for a loan forbearance plan; and (3) offered a deed in lieu. *See* Defs.' Br. 23; Defs.' Exs. A [ECF No. 56 at 7-10], A-17 [ECF No. 56 at 132-

34], B [ECF No. 56 at 197], C [ECF No. 56 at 210-11].

Defendants also argue that Plaintiff's allegation that his application would be "mechanically denied" without being considered is incorrect because the evidence is clear that Ocwen considered Plaintiff for other loss mitigation options. *See* Defs.' Br. 23. Defendants further argue that, to the extent Plaintiff alleges that Ocwen was not timely in its consideration of Plaintiff's loss mitigation options, separate from the loan modification, such a claim fails, because Plaintiff's loan reinstatement in 2012 and Plaintiff's bankruptcy filing in 2013 were superseding events that prematurely ended Ocwen's review of Plaintiff's loss mitigation applications. *See* Defs.' Br. 23-24; Defs.' Ex. A [ECF No. App. 8-9].

In the response, Plaintiff argues that Defendants violated TFC Section 392.301(a)(8), because Defendants failed to comply with RESPA in connection with his February 2014 and November 2014 applications. Pl.'s Br. 19. Plaintiff also argues that Ocwen violated TFC Sections 392.304(a)(14) and 392.304(a)(19), because Ocwen urged Plaintiff to submit detailed applications, when it knew it would not consider Plaintiff for a loan modification. *See* Pl.'s Br. 21.

In the reply, Defendants argue that Plaintiff references

misleading deposition testimony and imposes additional legal burdens in an attempt to revive his claims, but because Ocwen complied with RESPA, it was legally entitled to foreclose on the Property. *See* Reply 9. Defendants also argue that Plaintiff's claim that Ocwen nefariously schemed to obtain Plaintiff's financial information for its own profit does not make sense, and Ocwen considered and provided Plaintiff with all of the available options. *See* Reply 9. Defendants argue that the undisputed facts refute Plaintiff's deceptive arguments. *See* Reply 9.

As discussed, because the evidence shows that Ocwen complied with RESPA, Plaintiff's claim that Defendants unlawfully foreclosed on his Property because Ocwen failed to comply with RESPA lacks merit. Plaintiff also fails to bring to the Court's attention evidence showing that Ocwen intended to mechanically deny Plaintiff's applications. As Defendants argue, the deposition testimony Plaintiff refers to does not support Plaintiff's argument, and the evidence does not support Plaintiff's TDCA claims. Furthermore, because Plaintiff does not prevail on his TDCA claims, he is not entitled to damages or attorneys' fees in connection with the TDCA claims. Therefore, summary judgment is granted with respect to Plaintiff's TDCA claims.

## Promissory Estoppel

Plaintiff alleges that Ocwen: (1) went over the terms of a proposed forbearance plan with him over the phone; (2) had him agree to the terms over the phone; (3) informed him that the plan would be memorialized in writing so that he could sign it; but (4) failed to send him the plan in writing. *See* 4th Am. Compl. 18-19. Plaintiff argues that he has been damaged, because he has not received the benefit of this bargain and was not able to operate under the terms of the forbearance plan that he agreed to. *See* 4th Am. Compl. 19. Plaintiff seeks damages and attorneys' fees in connection with his promissory estoppel claim. *See* 4th Am. Compl. 19.

Defendants argue that Plaintiff's attempt to state a promissory estoppel claim based on an alleged oral agreement of a forbearance plan fails, because a promissory estoppel claim is subject to the statute of frauds. *See* Defs.' Br. 26-27. In the response, Plaintiff argues that Ocwen's internal call notes document the fact that the parties on multiple occasions agreed to the forbearance plan, and that the written agreement would be sent to Plaintiff. *See* Pl.'s Br. 26 [ECF No. 57-1] (citing Pl.'s App. 230 [ECF No. 57-2]). In the reply, Defendants argue that Plaintiff's conclusory arguments regarding the

existence of a written agreement at the time of Ocwen's purported promise fail, and that Plaintiff fails to provide evidence of an existing written forbearance plan at the time of Ocwen's purported oral promise. *See* Reply 9.

"Under Texas law, promissory estoppel requires that 'the agreement that is the subject of the promise must comply with the statute of frauds. That is, the agreement must be in writing at the time of the oral promise to sign it.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549 (5th Cir. 2010) (quoting *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 438 (Tex. 2002)). The note Plaintiff references indicates that: (1) the forbearance plan was explained to the borrower and the borrower understood; (2) the borrower was advised that he will need to put a $13,000 down payment by April 15th and that his new monthly payments will be $2,858.04 for 12 months beginning May 1st; (3) the borrower was advised that the it will take 24 to 48 hours for the forbearance plan to be approved by upper management and that the borrower was ok with that; and (4) the borrower was advised that the down payment and a signed agreement must be received in order for the agreement to go into effect and that the borrower would be called once the plan was

approved. *See* Pl.'s App. 230.

As Defendants argue, Plaintiff's promissory estoppel claim fails, because Plaintiff failed to show that there was a written agreement at the time of the oral promise. The call log Plaintiff refers to at most shows that the parties agreed to terms, but does not show that the agreement was finalized, because it was pending approval by upper management. *Cf. Sullivan*, 600 F.3d at 549 ("His promissory estoppel claim nevertheless fails because he affirmatively asserted in his response to Leor's motion to dismiss that no written document was finalized, rendering him unable to satisfy the elements of promissory estoppel. Sullivan cannot now change his position. This admission bars Sullivan from taking a contrary position on appeal."). In consideration of the foregoing, summary judgment is granted with respect to Plaintiff's promissory estoppel claim. Because Plaintiff does not prevail on his promissory estoppel claim, he is not entitled to attorneys' fees or damages in connection with this claim.

<u>Respondeat Superior</u>

Plaintiff alleges that Defendants are vicariously liable for the conduct of their employees, agents, attorneys, affiliated entities, vice principals, and representatives of Defendants' affiliated entities. 4th

Am. Compl. 7. As discussed, the evidence demonstrates compliance with RESPA and the TDCA, and that Plaintiff's promissory estoppel claim fails. Therefore, the issue of vicarious liability is moot. *See Pollard v. Church of God in Christ, Inc.*, 2017 WL 5198356, at *2 (N.D. Tex. Nov. 9, 2017 ("Under the doctrine of respondeat superior, an employer is liable for an employee's torts if: (1) his acts were within the employee's general authority; (2) the acts were in furtherance of the employer's business; and (3) the acts were aimed to accomplish the employment objectives for which the employee was hired." (citing *Minyard Food Stores v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002)));*Weaver v. U.S. Coast Guard*, 857 F. Supp. 539, 543 n.4 (S.D. Tex. 1994) ("Supreme Court and Fifth Circuit law mandate that this Court apply Texas state-law principles of respondeat superior." (citing *Williams v. United States*, 350 U.S. 857, 857 (1992); *Garza v. United States*, 809 F.2d 1170, (5th Cir. 1987); *Kendrick v. United States*, 854 F. Supp. 453, 456 n.2 (E.D. Tex. 1994))).

<u>Federal Declaratory Judgment Act</u>

Plaintiff seeks, in the alternative, a declaration that Defendants violated Section 1024.41(d). 4th Am. Compl. 21. Defendants argue that Plaintiff's request for declaratory relief cannot proceed and

should be dismissed, because Plaintiff's underlying claims fail. *See* Def.'s Br. 29. "The Declaratory Judgment Act, which authorizes a federal court to 'declare the rights and other legal relations of any interested party seeking such declaration,' is merely a procedural device and does not create any substantive rights or causes of action." *Smitherman v. Bayview Loan Servicing*, 2018 WL 1176480, at *4 (5th Cir. Mar. 6, 2018) (citing 28 U.S.C. § 2201(a); *Harris Cty., Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015); *Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001)). Therefore, summary judgment is granted with respect to Plaintiff's declaratory judgment claim.

<u>Injunctive Relief</u>

Plaintiff asks the Court to "enjoin Defendants from selling the Property at a foreclosure sale un[less] the Defendants serve the notice required by 12 C.F.R. § 1024.41(c)(1)(ii) and allow Plaintiff the opportunity to appeal any denial of a loss mitigation application." *See* 4th Am. Compl. 22. Plaintiff had to follow the applicable provisions governing the appeal of application denials. In addition, Defendants state that Plaintiff did not appeal any denials. *See* Reply 8. Plaintiff further stated at his deposition that he "can't say that [he] appealed."

*See* Defs.' Ex. B [ECF No. 56 at 186]. In addition, Plaintiff is not entitled to injunctive relief, because Plaintiff failed to meet his burden as to the underlying claims. *See Mote v. Walthall*, 2017 WL 515411, at *4 (E.D. Tex. Feb. 8, 2017) ("A claim for injunctive relief is a remedy that does not stand alone, but requires a viable underlying legal claim.") (citing *Horne v. Time Warner Operations, Inc.*, 119 F. Supp.2d 624, 630 (S.D. Miss. 1999), *aff'd by* 228 F.3d 408 (5th Cir. 2000))).

### Exemplary Damages

Plaintiff contends that he is entitled to exemplary damages, because Defendants' conduct constitutes malice, gross negligence, and fraud. *See* 4th Am. Compl. 21 (citing TEX. CIV. PRAC. & REM. CODE § 41.003(1)). Plaintiff also seeks an award of exemplary damages pursuant to the TDCA. *See* 4th Am. Compl. 21. Defendants argue that Plaintiff failed to present any evidence showing that Defendants acted with malice, gross negligence, or fraud. *See* Defs.' Br. 30. Defendants also argue that Plaintiff is not able to establish gross negligence based on the facts of this case, because the language employed by the Texas statute in defining gross negligence is "extreme degree of risk," which pertains to situations where a defendant's conduct creates a strong

likelihood of a serious harm, such as death, financial ruin, or grievous physical injury. *See* Defs.' Br. 30 (citing *Kovaly v. Wal-Mart Stores, Tex., LLC*, 157 F. Supp. 3d 666, 670 (S.D. Tex. Jan. 18, 2016); *Henderson v. Norfolk S. Corp.*, 55 F.3d 1066, 1070-71 (5th Cir. 1995)). As Defendants argue, Plaintiff is not entitled to exemplary damages, because there is no evidence showing that Defendants acted with malice, gross negligence, or fraud, and also because Plaintiff is not entitled to relief on the underlying substantive claims.

## Section 83.001

Plaintiff alleges that Power Default Services, Inc. violated Chapter 83 of the Texas Government Code, because it received compensation for preparing legal instruments affecting title to real property, but it is not a licensed attorney. *See* 4th Am. Compl. 19. On December 18, 2017, all of the claims against Power Default Services, Inc. were dismissed from this lawsuit with prejudice. *See* Order [ECF No. 62]. The allegations pertaining to this claim do not involve the remaining defendants in this lawsuit. Therefore, this claim is moot with respect to the remaining defendants.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

**SO ORDERED**.

Dated: March 28th, 2018.

BARBARA M. G. LYNN
CHIEF JUDGE